## Dotts Ivy *v.* State of Mississippi.

1. Criminal Law. *Murder. Instruction. Code* 1892, § 1149.

 An instruction purporting to define murder under the statute, Code 1892, § 1149, which excludes the statutory words "without authority of law," is erroneous.

2. Same. *Evidence. Witness. Woman. Bastard.*

 On the trial of a murder case it is competent for the state to show that a female witness for defendant is his mistress; but the paternity of her children by other men is incompetent.

3. Same. *Self-incrimination. Advice.*

 If a female witness be asked in a murder case who is the father of her illegitimate child, she should, where her answer might subject her to a criminal prosecution, be advised by the court of her right to decline to answer the question.

From the circuit court of, first district, Chickasaw county.

Hon. Eugene O. Sykes, Judge.

Ivy, the appellant, and others were jointly indicted for the

murder of one William McQuiston.  Upon a severance appellant was separately tried, convicted and sentenced to be hanged, from which conviction and sentence he appealed to the supreme court.  The opinion of the court contains a sufficient statement of the facts to insure a comprehension of the question decided.

The first instruction given for the state, mentioned in the opinion of the court, is as follows: "The court instructs the jury that murder is the killing of a human being with the deliberate design to effect the death of the person killed, and if the jury believe from all the evidence in the case, beyond a reasonable doubt, that the defendant, Dotts Ivy, so killed the deceased, then the jury will find the defendant guilty as charged."

*A. T. Stovall,* for appellant.

The court erred in permitting the district attorney to prove, or attempt to prove, that Becky Deering, a material witness for defendant, was the mother of children born out of wedlock. *McMasters* v. *State,* 81 Miss., 376.

To use the language of this court in the case cited this "was too heavy a load to put on a defendant before an average jury on so grave a trial," and besides that was an immaterial and irrelevant matter to the issue involved.  *State* v. *Glinn,* 31 L. R. A., 298; *People* v. *Un Dong,* 106 Cal., 83.

The definition of murder in the code, sec. 1149, says, "The killing of a human being without authority of law, by any means, or in any manner, shall be murder in the following cases: When done with the deliberate design to effect the death of the person killed, or of any human being;" and in this case the purpose of the district attorney was of course to define murder as the statute defines it, but he left out a very material part of the definition, for not every killing with a deliberate design to effect the death of the person killed, is murder.  It must be done without authority of law.  *Strickland* v. *State,* 81 Miss., 135.

*William Williams,* attorney-general, and *Gilleylen & Left-wich,* for appellee.

The evidence offered by the state and admitted by the court touching the relation of Becky Deering and defendant Dotts Ivy 'was competent. The witness, Becky Deering, was an inmate of the house of defendant and a material witness in his behalf, we might say the most material. She swore to facts affirmatively going to his exculpation and contradicted much of the state's evidence.

The bias, animus, or partiality of Becky Deering became a matter of direct inquiry by the court. It was in no sense collateral or immaterial. Becky Deering was first asked if . Dotts Ivy was not the father of her children born out of wed-lock since she had been living with him. She made no objection to the question on the ground that it tended to subject her to a criminal prosecution, and denied that improper relations existed. She swore that she had borne four children in the ten years she had lived with defendant.

The material matter here in dispute was the partiality of Becky Deering for the defendant. If he was the father of her children, then it became important for the jury to know it in determining to what extent she should be believed. It was directly material. In assumpsit on a promissory note the execution of which was disputed, it was held material to the issue, to inquire of the subscribing witness, she being a servant of the plaintiff, whether she was not his kept mistress. 1 Gr. Ev., sec. 450; *Martin* v. *State,* 28 South., 92.

Not only can a witness be questioned on cross-examination as to matters showing his motives, interest, or animus, but he can be contradicted as to such matters. 1 Gr. Ev.,' sec. 450; *Long* v. *Lapkin,* 9 Cush., 361; *Com.* v. *Byron,* 14 Gray, 31; *Titus* v. *Ash,* 4 Fost. (N. H.), 319; *Martin* v. *Farnham,* 5 Fost. (N. H.), 195; *Drew* v. *Wood,* 6 Fost. (N. H.), 363; *Atwood* v. *Welton,* 7 Conn., 66; *Newton* v. *Harris,* 6 N. Y., 345.

As to the first instruction for the state complained of, it is sufficient to say that the action of the court in granting this instruction was not made a ground of the motion for a new trial and cannot be considered here. Besides, the law attempted to be given by it is fully stated in the instructions for the defense.

Argued orally by *A. T. Stovall,* for appellant, and by *William Williams,* attorney-general, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

When Becky Deering was recalled, the district attorney was allowed to ask her, over the objection of counsel for defendant, how many children she had in all (not simply how many she had by defendant), and their ages, and who was the father of her children—all of them. The court had first excluded this testimony, but unfortunately let it in later. So, also, the state was allowed to ask the witness Julia Gladney what the children of Becky Deering (all of them) called defendant, to which she answered, "Pappy;" and the state was further allowed to ask Mary Chandler, "Whose children are those of Becky Deering?"—all of them. Several observations are to be made with reference to this testimony. It was not pretended that more than four of the seven children were the children of defendant. Yet the inquiry was allowed to take the wide range of showing who the fathers of all the children were, one of whom was twenty-one years old. She had only worked for the defendant ten years. Again, the witness Becky Deering was not instructed as to her right to decline to answer questions which might incriminate herself, as the better practice requires. And yet undoubtedly her answer might have subjected her to criminal prosecution. It is sound law, doubtless, that a witness may be shown, by proper testimony, to be the mistress of a defendant, since that would go to her credit as a witness when the defendant was on trial. But no such un-

limited range of inquiry as the record here discloses can justly be allowed. It goes far beyond showing Becky Deering's interest in the defendant's acquittal. It sought to uncover her whole past life, as to the paternity of all her children; and she herself was made to answer, over objection, questions as to her right to decline to answer which she was not instructed.

The first instruction for the state ought to have contained the .words "without authority of law," since it was manifestly drawn under the statute.

*Reversed and remanded.*