## ERVIN v. STATE.

[85 South. 183, In Banc. No. 21038.]

1. HOMICIDE. *Instruction defining manslaughter held not erroneous
   despite omission, where only defense was self-defense.*

   An instruction for the state defining "manslaughter" as killing
   "in the heat of passion without malice," at a time when defend-
   ant was in no danger at the hands of deceased, but omitting
   "without authority of law," was not erroneous where the only
   defense relied upon by the defendant was "self-defense."

2. HOMICIDE. *Cause of death as question for jury.*

   In a trial for homicide, *held* on the evidence that it was a question
   of fact for the jury as to whether an ax wound inflicted by de-
   fendant or the prior striking of deceased in the stomach by a
   brick thrown by defendant was the cause of death.

APPEAL from circuit court of Carroll county.
HON. T. L. LAMB, Judge.

Lem Ervin was convicted of manslaughter and he ap-
peals. Affirmed.

*F. N. Glass,* for appellant.

Instruction No. 1 for the state attempted to define manslaughter and was in the following language: "The court instructs the jury for the state, that if you believe from the evidence beyond a reasonable doubt that the defendant killed the deceased in the heat of passion, without malice, at a time when he was in no danger real or apparent of losing his life or of receiving great bodily harm at the hands of the deceased, you will find him guilty of manslaughter . . ." and in attempting to define manslaughter, the court instructed the jury, in the same instruction, as to its duties. The instruction was erroneous in that it was an effort on the part of the state to have the jury acquainted with the necessary elements of manslaughter, but it failed to state one necessary statutory element that the act must be done "without authority of law." It may be contended that the instruction is not a definition of manslaughter, but the language used is one that cannot be viewed in any manner except as a definition, with further instructions regarding the duties of the jury, when it plainly tells the jury that if they believe from the evidence certain things relative to the case at issue you will find him guilty of manslaughter. The language used is nothing short of an effort to define the crime, and then instruct the jury as to its duty in the premises, when the definition robs defendant of a statutory right by failing to give the jury the benefit of a full definition of the crime. The instruction is fatal when it failed to advise the jury that the defendant must be acting without authority of law, before they would be warranted in bringing in a verdict of guilty in the case. This contention is supported by this court in *Ivy* v. *State,* 84 Miss. 264, *McNeal* v. *State,* 115 Miss. 678, 76 So. 625; *Barnes* v. *State,* 118 Miss. 621.

This error was fatal, probably, in the trial of this case which entitled the defendant to a new trial on account of the conflict in the theories with reference to the cause of Blake's death. Under the theory of the state, as presented to the jury, Blake's death was caused by the ax wound in the back, inflicted deliberately by appellant during the second difficulty. However, the only evidence offered by the state was that of Blake's mother-in-law who testified that blood passed from Blake in a bowel discharge shortly before his death, and also the evidence of some negroes that bloody water ran out of the coffin before Blake was buried. It is shown conclusively, however, by the evidence of Dr. Kittrell that the death was due solely to peritonitis caused by the blow in the stomach with a brick, which could not have been caused by the ax wound in the back. (Dr. Kittrell's evidence, Record page 47). Also it is shown by the Doctor that the discharge mentioned could have been caused by peritonitis. (Dr. Kittrell's evidence, same page of the record). This wound was caused under different circumstances entirely, than that which surrounded the parties at the time the ax wound was inflicted. This wound was inflicted with a brick while the parties were in a running fight, Lem being chased by Blake and his wife who were very energetic in their use of brick and an ax on him.

I would, therefore, respectfully submit that for these reasons the verdict was contrary to the law and the evidence; the state's instruction No. 1, in giving to the jury an incomplete definition of manslaughter, with an instruction to find defendant guilty upon finding for only a part of the State's case, contributing largely to the conviction and robbed appellant of a right given to him by law, entitled him to a new trial, and that the lower court erred in overruling defendant's motion for same.

I would respectfully ask that this cause be reversed and remanded and appellant be given a new trial.

*Frank Robertson,* Attorney-General, for the state.

Appellant complains of the action of the court in granting instruction No. 1 for the state. This instruction may be found at page 69 of the record. It reads as follows: "The court instructs the jury for the state that if you believe from the evidence beyond a reasonable doubt that the defendant killed the deceased in the heat of passion, without malice, at a time when he was in no danger, real or apparent, of lossing his life or of receiving great bodily harm at the hand of the deceased, you will find him guilty of manslaughter and the form of your verdict will be, 'We, the jury, find the defendant guilty of manslaughter."

Defendant also complains of instructions Nos. 2 and 3. given for the state, but does not urge this action of the court as error in their brief. It is submitted that there is nothing wrong with instructions Nos. 2 and 3, and I shall confine my argument to instruction No. 1.

It will be noted that instruction No. 1 for the state does not attempt to define the crime of manslaughter and for this reason it was not necessary to include the words of the statute without authority of law. *Dixon v. State,* 64 So. 468.

The appellant cites *Ivy* v. *State,* 84 Miss. 264; *Mc-Neal* v. *State,* 115 Miss. 678; and *Barnes* v. *State,* 118 Miss. 621. The court in *Dixon* v. *State,* cited above, discusses *Ivy* v. *State,* and also *Rutherford* v. *State,* 100 Miss. 832, on the question of omitting the words "without authority of law" from an instruction.

In the Ivy case the court reversed on other grounds than that of erroneous instructions. The language of the court on the question of omitting the words "without authority of law" is found in the last paragraph of the decision and is as follows: "The first instruction for the state ought to have contained the words, "without

authority of law" since it was manifestly drawn under the statute."

The instruction in this case attempted to define murder under section 1149, Code of 1892. It is submitted that this case is not decisive of the case at bar in that the former case dealt with an instruction which attempted to define, not to instruct. Moreover it would appear that the last paragraph of the decision in the Ivy case is *dicta*.

In the McNeal case, a manslaughter case, the court held that the omission of the words "without authority of law" in an instruction attempting to define manslaughter was erroneous. It will be seen again that there was an attempt by the court to define the crime under the statute, whereas in the instant case the instruction complained of does not attempt to define the crime of manslaughter.

The Barnes case is not in point, except in a general way. This was a murder case in which the facts were close and the court simply held that the defendant was entitled to clear instructions on the law. Even though it be conceded, however, that instruction No. 1 in the instant case is a faulty instruction, nevertheless it is cured by the other instructions for the state and the defendant. Special reference is made to the seventh instruction for the defendant. This instruction tells the jury that it is incumbent upon the state to prove every material allegation of the indictment. One of the material allegations of the indictment is that which charges the accused with unlawfully and feloniously killing the deceased. In instructing the jury that the state must prove every material allegation of the indictment, the court in effect, instructed the jury that unless the state had proved beyond every reasonable doubt that the defendant killed the deceased without authority of law, they should acquit him.

It is conceded that there was no error in the first in-
struction for the state, or if so it is not such an error as
would justify a reversal, especially ás the conviction of
the defendant was clearly supported by the evidence.
*Thomas* v. *State,* 61 Miss. 60; *Allen* v. *State,* 66 Miss. 385.

SYKES, J., delivered the opinion of the court.

The appellant, Lem Ervin, was convicted in the circuit
court of Carroll county of manslaughter. There are
but two assignments of error necessary to consider on
this appeal: First, the appellant claims that he should
have had a peremptory instruction in his favor; second,
that the state obtained an erroneous instruction upon
manslaughter.

Upon the first proposition: The testimony for the
state is to the effect that the appellant was being pur-
sued by the deceased with an ax. That appellant stop-
ped and in a scuffle threw the deceased down, wrenched
the ax out of his lands, and while deceased was prostrate
on the ground, face downward, appellant put one foot on
his body and with both hands struck the deceased with
the blade of the ax, cutting him to the hollow between the
sixth and seventh ribs. That deceased was at once put to
bed and visited by a doctor within several hours after
the injury was inflicted. That he bled copiously from
that time until he died and was buried, and that blood
dripped from the coffin in the church at his funeral. He
lived three or four days: The testimony shows that,
previous to the cutting of deceased with the ax, he and
appellant had both thrown bricks at each other, and that
appellant had hit deceased in the stomach with a brick.
The doctor who treated deceased testified that deceased
died in his opinion from peritonitis and not from the ax
wound; that the peritonitis could have been caused by
the lick in the stomach with the brick. Upon this testi-
mony we think it was a question of fact to be decided by

the jury as to whether or not the ax wound or the lick with the brick was the cause of deceased's death and that the peremptory instruction was correctly refused.

Second. Instruction No. 1 given for the state reads as follows:

"The court instructs the jury for the state that if you believe from the evidence beyond a reasonable doubt that the defendant killed the deceased in the heat of passion, without malice, at a time when he was in no danger, real or apparent, of losing his life or of receiving great bodily harm at the hands of the deceased, you will find him guilty of manslaughter, and the form of your verdict will be, 'We, the jury, find the defendant guilty of manslaughter.' "

It is contended by the appellant that this instruction is erroneous because it omits the phrase "without authority of law." In the cases of *Ivy* v. *State*, 84 Miss. 264, 36 So. 265, and *Rutherford* v. *State*, 100 Miss. 832, 57 So. 224, the state obtained an erroneous definition of murder in its instructions omitting the words "without authority of law." Any killing with the deliberate design to effect the death of the person killed, under those instructions, would be murder. These instructions are erroneous for the reason that they altogether omit the fact that a person may have the deliberate design to kill and yet be justible under the law because he kills in self-defense, or he might kill for other reasons justifiable under our laws. This is in effect the holding in the case of *Barnes* v. *State*, 198 Miss. 621, 79 So. 815.

In the case of *McNeal* v. *State*, 115 Miss. 678, 76 So. 625, an instruction in this identical language was given. In that case it was contended by the attorney general that the omission of the words "without authority of law" could not have prejudiced the defendant's case because his defense was "self-defense." We held, however, in that case that the appellant was entitled to the further defense that he had a right to kill the deceased

to prevent him from committing a felony upon some women, and that this instruction to the jury was a practical exclusion of that defense, and was therefore error. In this case, however, the only reason advanced by appellant, or that could have been advanced by him, for inflicting the fatal injury upon the deceased with the ax, was that his life was in real or apparent danger at the hands of the deceased at that time. By this instruction he was not prejudiced in any way in his defense. In fact, instruction No. 2 given for defendant is a concrete instruction upon the facts in this case. This instruction concludes in this manner:

"When defendant got possession of said ax and immediately struck deceased with it, and that defendant struck said blows while he was in real or apparent danger of losing his life or of suffering great bodily harm at the hands of the deceased, then the defendant had a right to protect himself with such force as he used, and the jury will acquit him."

The only authority of law in this case which would have permitted the appellant to take the life of the deceased was embodied in these two instructions.

We might add that under the testimony of the appellant himself he struck the deceased with the ax after he had disarmed him, when deceased was on the ground practically at the mercy of appellant.

*Affirmed.*