SMITH v. STATE.

(Division A. April 17, 1933. Suggestion of Error Overruled May 15, 1933.)

[147 So. 482. No. 30471.]

86

Gilruth Mounger and **A. H. Bell**, both of Greenwood, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

**Cook, J.,** delivered the opinion of the court.

In the circuit court of Leflore county, the appellant was convicted of murder, and was sentenced to the state penitentiary for life.

The state offered evidence proving that the deceased, Roberta McBride, came to her death as the result of shotgun wounds in the side of her face, and also offered in evidence a confession or statement of the appellant made to a deputy sheriff admitting that he killed the deceased with a shotgun.

As a witness in his own behalf, the appellant admitted that he killed the deceased with a shotgun, but claimed that he killed her in self-defense. He testified that during periods of time that the husband of the deceased, Roberta McBride, was away from home, be became intimate with her; that finally having become fearful of the wrath of the husband, he sought to sever these illicit relations, but Roberta objected and upbraided him on account of his attentions to another woman; that when he quit his work about five thirty o'clock on the day before the killing he borrowed a shotgun for the purpose of going 'possum hunting that night, without dogs; that he purchased shells for the gun, and started on the hunt about six or half past six o'clock.

He further testified that when he started hunting, he met Roberta, and thereupon abandoned his hunt and remained with her until nine o'clock, when he kissed her good night, and she went to her home, and he to his; that about two o'clock A. M. she knocked on his door and he let her in; that she then had a pistol which she laid on a shelf in his room; that she continuously quarreled with him from that time until five o'clock, when it

was time for him to go to work; that he then got up and dressed, and they left the house together, he carrying the shotgun which he had borrowed, and Roberta carrying the pistol which she had brought to his room. He further testified that as they proceeded toward Roberta's home, she continued to quarrel with him about the other woman, and finally said: "Stop, I ain't joking about what I told you, if I catch you over there. If you don't believe it, I will do it to you now." And thereupon she snapped the pistol at him, and he turned and shot her, believing that it was necessary to do so to save his own life; that after he shot her, he secured the pistol which she had snapped at him and carried it and the shotgun to the house where he worked, and put them behind the kitchen door, and then reported to his employer what he had done.

The evidence further shows that the pistol contained five cartrides, all of which had marks or indentations of the plunger of the pistol on the rim, and some of them several such indentations. There was an effort to show by the appellant that the plunger of this pistol was pointed downward, so that it would not strike the cap of the cartridge, but would strike the rim. This testimony was objected to, and thereupon the pistol was offered in evidence for the purpose of enabling the jurors to determine that fact for themselves. The appellant testified that he did not know how many times Roberta snapped the pistol at him, and whether she snapped it more than once.

A witness for the state testified that about six o'clock of the evening before the killing, the appellant came to his home and sought to borrow or buy about two shotgun shells; that he asked the appellant if he was going hunting, and he laughed and replied: "No, not exactly." That he saw the appellant again about seven thirty o'clock that night, standing at the gate of a nearby mill-

yard with a shotgun in his hand. In rebuttal, another witness said that she saw and talked with the appellant at this mill gate about seven o'clock on the evening before the killing, and that he then had a shotgun in his hand. The occupants of the room adjoining that in which the appellant lived testified, in rebuttal, that they heard no one enter his room during the night, and heard no talking or quarreling therein, but that on the following morning this bed did not show evidence of having been slept in the night before; the appellant having testified that he did not make up his bed when he left with Roberta that morning. Another rebuttal witness testified that about four o'clock on the morning of the shooting, she saw a man and a woman go to the door of Roberta's residence and call her out, and that after some conversation with them, Roberta locked her door and went away.

The appellant first contends that the peremptory instruction requested by him should have been granted, for the reason that his version of the facts and circumstances surrounding the killing is reasonable and is not contradicted either by the physical facts or the testimony of witnesses, and makes a clear case of self-defense. The appellant was contradicted as to his movements and acts during the several hours immediately preceding the killing, and as to his association with the deceased during that period; and we think the reasonableness of his version of the facts, and the inferences to be drawn from all the evidence, was for the jury, and no error was committed in refusing the peremptory instruction.

The appellant next complains of the admission of the above-stated rebuttal testimony on the ground that it was not in rebuttal of any material matters testified to by the appellant. The appellant testified, in detail, in reference to his acts and movements during the night of the homicide, and as to his association with the deceased, and her acts and conduct towards him during that time

and immediately preceding the shooting, for the purpose of showing her frame of mind and conduct leading up to the alleged attempt to do him great bodily harm. The rebuttal testimony tended to contradict in material respects the statements of the appellant in reference to these matters. This testimony had a very important bearing upon the issue presented as to the truthfulness and reasonableness of the appellant's version of the facts and circumstances surrounding the shooting, and was properly admitted.

The appellant next complains of an instruction granted to the state which defined "murder" as "the killing of a human being with malice aforethought." In support of this assignment, he relies on the cases of Ellis v. State, 108 Miss. 62, 66 So. 323, 324, and Dye v. State, 127 Miss. 492, 90 So. 180, 181, neither of which supports it. In the Ellis case, supra, it was merely held that an instruction informing the jury that "malice aforethought" means design or intention or purpose to effect the death of a person is obviously wrong, "since a homicide may be designed and intended, and at the same time entirely justifiable." In the Dye case, the court instructed the jury that "the term 'malice aforethought' . . . means the felonious design or purpose to effect the death of the person killed;" and the court held that this was not a correct definition of "malice aforethought," but since there was no element of manslaughter in the case, the error was not prejudicial, and declined to reverse the conviction for the reason that the defendant was there guilty of murder or nothing.

It is also said in argument that this instruction comes within the condemnation of the cases of Ivy v. State, 84 Miss. 264, 36 So. 265, and Rutherford v. State, 100 Miss. 832, 57 So. 224, in each of which there was an attempted statutory definition of "murder" which omitted the statutory words "without the authority of law."

Section 985, Code 1930, defines "murder" as "the killing of a human being, without the authority of law, by any means or in any manner, . . . when done with deliberate design to effect the death of the person killed." It is perfectly manifest that the killing of a human being with deliberate design to effect the death of the person killed is not murder unless it is done "without the authority of law." Consequently, the omission of these words from the statutory definition was necessarily prejudicial error.

In the case at bar, the instruction attempted to give the common-law definition of "murder," which is usually stated to be, "the unlawful killing of a human being with malice aforethought." If, as stated in the brief of counsel, "it is possible to conceive of a killing of another with malice aforethought, though lawfully," still the omission of the word "unlawful" or "feloniously" in the instruction complained of was not reversible error in view of the fact that the court instructed the jury at the instance of the appellant that, before it could convict the defendant of the crime charged in the indictment, it must "believe from all the evidence beyond every reasonable doubt and to a moral certainty that the defendant did wilfully and feloniously and of his malice aforethought kill and murder the deceased, Roberta McBride; and unless the jury do so believe, then it is the duty of the jury to bring in a verdict of not guilty."

We find no reversible error in this record, and, therefore, the judgment of the court below will be affirmed.

Affirmed.